IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 25-12364-NVA |
| | ) | (Chapter 11) |
| JEFDAN PROPERTIES, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JEDFAN PROPERTIES, LLC | ) | Adv. Case No. 25-00154-NVA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON CAPITAL PARTNERS | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE

**<u>Your rights may be affected</u>. You should read these papers carefully and may wish to discuss them with an attorney.**

A motion to dismiss is a request that one or more claims in a case be decided without holding a trial. A motion to dismiss is governed by Rule 12 of the Federal Rules of Civil Procedure. Your complaint, or the portions of your complaint that the motion seeks to dismiss, may be dismissed if the Court finds that the complaint does not contain sufficient factual allegations to grant the relief you have requested.

If you want to oppose the motion to dismiss, you must file with the Court and serve on the other party a written response opposing the motion to dismiss and stating the reasons for your opposition. Your opposition must be filed and served within fourteen (14) days after the service date of the motion, plus three (3) additional days if the motion was served on you by mail, unless otherwise ordered by the Court. If you file a written response, the Court may hold a hearing at a location and time set forth in a notice from the Clerk of Court.

**If you fail to file a timely written response to the motion, the Court may grant the motion, in whole or in part, without holding a hearing**. This will result in the termination of the proceeding, or some part of the proceeding, in favor of the moving party.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 25-12364-NVA |
| | ) | (Chapter 11) |
| JEFDAN PROPERTIES, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JEDFAN PROPERTIES, LLC | ) | Adv. Case No. 25-00154-NVA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON CAPITAL PARTNERS | ) | |
| | ) | |
| Defendant. | ) | |

## **MOTION TO DISMISS**

Comes now DP Capital LLC d/b/a Washington Capital Partners ("DPCL"),[1] by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6), in response to the complaint (the "Complaint," as found at DE #1-1) of Jefdan Properties, LLC ("Jefdan" or the "Plaintiff" or the "Debtor"), and moves to dismiss the above-captioned adversary proceeding, in support thereof stating as follows:

---

[1] The Complaint is styled as being against "Washington Capital Partners aka WCP Fund I, LLC." Complaint, DE #1-1, at p. 1. "Washington Capital Partners" is the registered trade name of DPCL, not WCP Fund I LLC ("WCP"). However, to whatever extent the Complaint may be understood to be against WCP, this motion is fully adopted by WCP, which is an entity related to DPCL and which shares counsel with DPCL for purposes of this bankruptcy proceeding. Insofar as WCP is the counterparty to the two contracts referenced in the Complaint, it is believed WCP is the proper defendant herein. Rather than seek dismissal for failure to join a necessary and indispensable party, DPCL and WCP elect to seek dismissal for the more substantive reasons discussed *infra*.

1

## I.       Introduction

Two days before seeking bankruptcy relief, the Debtor filed suit against DPCL. Though this suit was not disclosed on Schedule A/B or on Jefdan's Statement of Financial Affairs, the litigation has now been removed to this Honorable Court. Upon review, however, there may be good reason the Debtor did not assign any value to the subject litigation on Schedule A/B: the Complaint fails to state any claim for which relief may be granted.

The gravamen of the pleading is that WCP, *see, supra,* n. 1, was tardy in funding various construction draws under a promissory note, sometimes not ever fully funding the requested draws. Yet a review of the subject promissory notes makes clear that WCP did not actually have any obligation to fund construction draws in any sum, at any time, under any circumstances. Jefdan appears to be suing for breach of a contractual rigor that not only does not exist but, worse, that is expressly disclaimed in the relevant debt instruments.

Perhaps cognizant of this issue, the Debtor alternatively seeks relief for (i) fraud in the inducement; and (ii) violation of a consumer mortgage law. Yet the fraud-centric claim is nonetheless undermined by the same contractual language, while also coming well short of the federal pleading standard for fraud. And the consumer claim is facially problematic for the simple reason that Jefdan is a legal entity and, as such, outside the definitional ambit of a consumer subject to the protections of the implicated statutory framework.

Moreover, and of significant relevance, the Debtor released and waived all claims against WCP in April 2024. Oddly, the Complaint does make reference to the document in which the release is set forth, yet Jefdan does not make any mention of the release itself in the Complaint.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Complaint be dismissed.

## II.    Standard

The standard governing a motion to dismiss, where causes of action are viewed in the prism of Federal Rule of Civil Procedure 8, is well established:

> Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

*Tankersley v. Almand*, 73 F. Supp. 3d 629, 633 (D. Md. 2014) (quoting Fed. R. Civ. P. 8(a)(2);

*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

Where, however, a claim sounds in fraud or mistake, a heightened pleading standard is applied. Fed. R. Civ. P. 9(b). As noted by this Honorable Court, "Rule 9(b) requires a plaintiff to plead 'the 'who, what, when, where, and how' of the alleged fraud.'" *In re TMST, Inc*., 610 B.R. 807, 824 (Bankr. D. Md. 2019) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc*., 525 F.3d 370, 379 (4th Cir. 2008) (quoting *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003))). This standard has been extrapolated upon by the United States Court of Appeals for the Fourth Circuit:

> Rule 9(b) provides, "In alleging fraud ..., a party must state *with particularity* the circumstances constituting fraud.... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." We have explained that the purpose of this higher pleading standard is to "provid[e] notice to a defendant of its alleged misconduct, ... prevent [ ] frivolous suits, ... eliminat[e] fraud actions in which all the facts are learned after discovery, and ... protect [ ] defendants from harm to their goodwill and reputation."
>
> In order to satisfy Rule 9(b), a plaintiff must "*at a minimum*, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." He or she must set forth "the who, what, when, where, and how of the alleged fraud" before access to the discovery process should be granted.

*Murphy v. Capella Educ. Co*., 589 Fed. Appx. 646, 652 (4th Cir. 2014) (quoting Fed. R. Civ. P. 9(b) (emphasis in *Murphy*); *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013) (emphasis in *Murphy*); *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008)).

Under both Rule 8 and Rule 9, a claim must adhere to the so-called "plausibility standard" to survive a motion brought under Rule 12(b)(6). *See, e.g.*, *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D.D.C. 2020) ("To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F.

Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

### III.    Factual Allegations

Taking the allegations of the Complaint as true for the sole and limited purpose of this motion, the Debtor saliently alleges as follows:

1.    Jefdan borrowed monies from WCP in 2021. Complaint, DE #1-1, at ¶¶ 8-9.

2.    The loan documents required WCP to disburse monies to the Debtor. *Id.* at ¶ 10.

3.    Draw requests were thereafter delayed for various reasons, including a loan manager taking time off for his honeymoon. *Id.* at ¶¶ 11-12.

4.    Certain draw requests were underfunded between May 14, 2023 and April 10, 2024. *Id.* at ¶¶ 13, 15.

5.    Multiple loan extension agreements were entered into between and amongst the parties. *Id.* at ¶ 14.

6.    WCP eventually stopped funding draws and scheduled a foreclosure of the property securing the promissory notes. *Id.* at ¶¶ 16-17.

While one modification agreement is appended to the Complaint, *id.* at pp. 37-40, the underlying promissory notes and other modification agreements are not, *id.*, *passim*. However, insofar as those instruments are expressly referenced in the Complaint, and central to the claims being advanced by the Debtor, they may be properly considered in connection with this motion. *See, e.g.*, *Penegar v. Liberty Mut. Ins. Co.*, 115 F.4th 294 (4th Cir. 2024) ("The relevant factual allegations are not always confined to the four corners of the complaint. Among other things, we may consider 'documents incorporated in the complaint by reference,' 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic. . .'") (citing

5

*United States ex rel. Oberg v. Pa. Higher Ed. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007); *Phillips v. Pitt Cnty. Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009); citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (July 2024 update)); *McCray v. Wells Fargo Bank N.A. (In re McCray)*, 2014 Bankr. LEXIS 5410, at *8 n.5 (Bankr. D. Md. Sep. 29, 2014) (". . . documents referenced in the complaint may be considered in connection with a motion to dismiss.") (citing *Philips*, 572 F.3d at 180; *Youssefi v. Renaud*, 794 F. Supp. 2d 585, 590-591 (D. Md. 2011)).

A review of those pertinent documents reveals, pertinently, the following additional facts omitted by the Debtor:

7.     Both promissory notes expressly provide, *inter alia*, "Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion." First Promissory Note, attached hereto as Exhibit A ("Ex. A"), at § 1; Second Promissory Note, attached hereto as Exhibit B ("Ex. B"), at § 1.

8.     Both promissory notes were modified four times, with the last such modification coming on April 22, 2024. *See* Fourth Modification of Commercial Deed of Trust Note and Other Loan Documents (the "HOF Modification"), attached hereto as Exhibit C ("Ex. C"); Fourth Modification of Commercial Deed of Trust Note and Other Loan Documents (the "SF NU Modification"), attached hereto as Exhibit D ("Ex. D").

9.     The fourth modifications are substantively identical, save for the financial terms thereof. *Compare* HOF Modification, Ex. C *with* SF NU Modification, Ex. D.

6

10.    In both of the fourth modifications, the Debtor acknowledges, *inter alia*, "Noteholder and Lender are not in breach of or in default under the Loan Documents." *See* HOF Modification, Ex. C, at p. 1; SF NU Modification, Ex. D, at p. 1.

11.    In both of the fourth modifications, the Debtor further acknowledges, *inter alia*, "Borrower has no claims of any kind whatsoever against Noteholder or Lender in connection with the Loan, Loan Documents, and/or Property." *See* HOF Modification, Ex. C, at p. 1; SF NU Modification, Ex. D, at p. 1.

12.    Both of the fourth modifications also contain a waiver and release providing, *inter alia*, "Borrower waives and releases all claims, if any, against Noteholder and Lender occurring, arising, or accruing from the beginning of time and continuing through the Effective Date in connection with the Loan, Loan Documents, and Property." *See* HOF Modification, Ex. C, at § 6; SF NU Modification, Ex. D, at § 6.

### IV.    Argument: Dismissal is Appropriate

#### a.   The Claims Have Been Released

As a starting point, the Debtor appears to have released all of the claims set forth in the Complaint. Though Jefdan oddly elects to attach one of the *third* loan modification agreements, from March 2023, *see* Complaint, DE #1-1, at pp. 37-40, the Debtor references—but neglects to attach—the most recent such agreements, from April 22, 2024. And those agreements would seem enormously relevant to a lawsuit that purports to bring causes of action for alleged wrongs temporally pegged to dates prior thereto.

As a matter of hornbook law, a party may contractually release any claims held by a counterparty. *See, e.g.*, *In re Tabb*, 2024 Md. App. LEXIS 738, at *22 (Md. App. Sep. 24, 2024) ("The Associate Commissioner's grant of summary decision was fully supported by evidence that

Mr. Tabb released his claims through two valid settlement agreements."); *Glass v. Doctors Hosp., Inc.*, 131 A.2d 254, 260 (Md. 1957) ("Even on these assumptions Dr. Glass has no rights that were violated when the hospital dismissed him, since on March 2, 1953, he executed a formal general release, in writing for a valid consideration, in which he waived all claims of every kind that he had against the hospital, including those arising by way of contract."); *Adams v. Moore Bus. Forms, Inc.*, 224 F.3d 324, 326 (4th Cir. 2000) ("These 14 employees filed this action to pursue claims against Moore for age discrimination, breach of contract, misrepresentation, wrongful discharge, and unlawful discharge. The district court entered summary judgment against the employees, finding that the releases they signed complied with the relevant federal and state requirements and constituted valid waivers of all of the employees' claims. We affirm.").

Here, the Debtor did just that, electing to release any and all claim against the lender (WCP) and the various noteholders, in exchange for a modification of the two debt instruments. And the release language is rather clear and unambiguous in nature: "Borrower waives and releases all claims, if any, against Noteholder and Lender occurring, arising, or accruing from the beginning of time and continuing through the Effective Date in connection with the Loan, Loan Documents, and Property." *See* HOF Modification, Ex. C, at § 6; SF NU Modification, Ex. D, at § 6.

These releases were both executed on April 22, 2024. *See* HOF Modification, Ex. C, at p. 4; SF NU Modification, Ex. D, at p. 4. A good faith reading of the Complaint suggests every ill alleged to have been done by DPCL—saving and excepting noticing a foreclosure of the Debtor's collateral (which, self-evidently, was halted by Jefdan's petition for bankruptcy relief)—occurred prior to April 22, 2024. And it thusly appears each cause of action is barred by the Plaintiff's own release.

### b. Count I Should be Dismissed Because the Debtor Misstates the Subject Contract

The first count of the Complaint is for breach of contract, being premised upon allegedly tardy funding of draw requests, an ultimate cessation of funding, and the charging of default fees under the loan documents. The count also references a foreclosure sale that was scheduled for the day after the Debtor sought bankruptcy protection though, quite notably, the Complaint does not allege the foreclosure to have been carried out (nor does Jefdan so much as intimate any violation of the automatic stay to have occurred). These theories of contractual breaches, however, are facially undermined by the contract itself, which does not impose any duty on WCP to fund draw requests and, instead, makes expressly clear that such funding is in the sole and absolute discretion of WCP.

Under Maryland law, "a complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *RRC Ne., LLC v. BAA Md., Inc*., 994 A.2d 430, 440 (Md. 2010) (quoting *Continental Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 369 A.2d 566, 569 (Md. 1977). *See also In re Council of Unit Owners of the 100 Harborview Drive Condo.*, 584 B.R. 639, 655 (Bankr. D. Md. 2018) ("Under Maryland law, '[t]he elements of a cause of action for breach of contract include the existence of a contractual obligation, a material breach of that contractual obligation, and resulting damages.'") (quoting *Burdyck v. Phx. Affiliates, Inc.*, 2015 Md. App. LEXIS 491 (Md. App. Dec. 1, 2015) (citing *Kumar v. Dhanda*, 17 A.3d 744 (Md. App. 2011))).

Here, the Complaint does not actually point to any contractual duty owed to the Debtor, by WCP (or anyone else), that has not been honored. While the pleading broadly surmises that not funding construction draws in a manner as punctual as the Debtor may have wished did, in some

fashion, constitute a contractual breach, the pleading never actually identifies any contractual clause offended by the timing of the draw distributions. And, to the contrary, as observed *supra*, the promissory notes themselves are quite clear: "Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion." First Promissory Note, Ex. A, at § 1; Second Promissory Note, Ex. B, at § 1.

The plain language of the notes provides that WCP is only to fund subsequent draws in the entity's "sole and absolute discretion." *Id.* So the timing of such draws, as well as the sum of such draws, cannot constitute a breach on the part of WCP. And this verbiage also means that permitting a loan officer to take vacation days for his honeymoon, rather equally, cannot constitute a breach on the part of WCP.

Similarly, while the Complaint asserts that charging default interest was somehow a breach of contract, the promissory notes themselves plainly provide for such default interest. *See* First Promissory Note, Ex. A, at § 5; Second Promissory Note, Ex. B, at § 5. The Debtor does not allege an event of default to have not been extant when the default interest was charged; the Debtor simply seems to proffer that charging default interest was, in some ill-defined fashion, a breach of the very contract that allows WCP to charge default interest.

In terms of foreclosing, it is difficult to fathom how a foreclosure that never occurred could constitute a breach of contract in any circumstance. Yet such is even more difficult where, as here, the loan documents expressly provide for this very remedy. *See* Deed of Trust, DE #1-1, at § 8, p. 21.

In short, Jefdan does not actually point to any breach, of any contractual obligation, in suing for breach of contract. Under *RRC*—alongside the rigors of seemingly every case to address the elements of this commonplace cause of action—a plausible allegation of an actual breach is necessary to survive a motion to dismiss. Count I of the Complaint is thusly meritorious of dismissal.

### c.  Count II is Belied by the Contract and is Not Pleaded with the Requisite Particularity

The second count of the Complaint is for fraud in the inducement. At the outset, it merits notation that this cause of action is supported, *vel non*, by allegations largely overlapping with those that purport to support the claim for breach of contract. Yet, as noted above, the plain text of the contractual agreement between the parties allows WCP to withhold draw requests, going so far as to insist monies shall only be disbursed in WCP's sole and absolute discretion. And it is accordingly difficult, on a macroscopic level, to appreciate how a party relying upon the express terms of a contract could, in so doing, be committing an act of fraud on a contractual counterparty.

To whatever extent "fraud in the inducement" is a tort separate from common law fraud,[2] the two causes of action share coterminous elements. *See Access Funding, LLC v. Linton*, 290 A.3d 112, 143 (Md. 2022) (citing *Rozen v. Greenberg*, 886 A.2d 924, 930 (2005)). Those elements are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Cent. Truck Ctr., Inc. v. Cent. GMC, Inc.*, 194 Md. App. 375, 388 (Md. App. 2010) (quoting *Gourdine v. Crews*, 955 A.2d 769 (Md. 2008)).

---

[2] This is unclear under Maryland law but, for reasons discussed below, also irrelevant.

Here, there is no actual false representation identified in the Complaint. Jefdan never asserts (nor could the Debtor assert) that WCP had an obligation to fund draw requests, much less to do so in a specific timeframe or on specific sums. The Debtor, rather, just generally theorizes that subjectively slow funding, and an ultimate cessation of funding, constitute fraudulent conduct. Yet such neither satisfies the pleading rigors of Rule 9 nor comports with the plain record set forth in the correlative loan documents.

Similarly, as to the second element of a claim for fraud, the Debtor does not—and cannot—point to knowledge of falsity on the part of WCP since, again, no actual false representation is ever identified in the Complaint. Without a misrepresentation, their quite plainly cannot be knowledge of falsity of the correlative misrepresentation. So this element does, too, come up well short.

Equally, the Debtor cannot allege a misrepresentation was made for the purpose of defrauding Jefdan without, first, pointing to an actual misrepresentation. The relevant provision of the promissory notes is imprinted on the first page thereof, in the first numbered section; this was—and is—plain to see. It is altogether unclear how putting a contractual term in such a prominent position could, plausibly, amount to an effort to defraud a contractual counterparty.

The same issue also plagues both the fourth and fifth elements of a claim for fraud. Jefdan cannot show reasonable reliance on a falsehood without first pointing to a falsehood. And Jefdan, similarly, cannot show compensable harm flowing from such reasonable reliance without first establishing the relevant reasonable reliance.

That this cause of action collapses on the very first element is notable, explaining—rather logically—how each ensuing element is, likewise, well missed in the Complaint. Yet it is also altogether bewildering that this cause of action was brought in the first place: either the Plaintiff did not read the very loan documents underlying this transaction before bringing suit (which would

raise myriad Rule 9011-centric issues on the part of the Debtor and the Debtor's pre-bankruptcy litigation counsel),[3] or the Plaintiff simply did not care that the very loan documents on which it is suing are facially exculpatory of the conduct for which it is suing.

### d.  Count III Seeks Consumer Relief on Behalf of a Business

The final cause of action in the Complaint is for violation of the Maryland Mortgage Fraud Protection Act (the "MMFPA"). Putting aside that the Debtor does not point to any fraudulent conduct that would offend the provisions of this act (for all of the reasons set forth above), this count necessarily fails for a far more simplistic reason: the subject law is limited in scope to consumers and a legal entity is, by definition, not a consumer.

As noted by the then-Maryland Court of Special Appeals, "[t]he MMFPA generally prohibits the deliberate use of misrepresentations during the mortgage lending process." *Newsom v. Brock & Scott, PLLC*, 264 A.3d 283, 305 (2021). Yet, as observed *passim*, the Complaint does not actually point to any misrepresentations—much less in a manner compliant with the requirements of Rule 9.

Yet even assuming, *arguendo*, the Complaint did make out a claim under the MMFPA, such would be immaterial insofar as the law is only applicable to consumers. The statute prohibits the commission of "mortgage fraud." Md. Code, Real Prop. § 7-402. "Mortgage fraud," in turn, is defined as various activities undertaken during the "mortgage lending process." Md. Code, Real Prop. § 7-401(d). "Mortgage lending process," meanwhile, is defined as ". . . the process by which a person seeks or obtains a mortgage loan." Md. Code, Real Prop. § 7-401(e)(1). And "mortgage

---

[3] Notably, the Debtor's proposed Chapter 11 counsel is *not* the attorney who filed the Complaint and, as such, is assuredly not subsumed within any concerns arising under Rule 9011.

loan," in due course, is afforded "the meaning stated in § 11-501 of the Financial Institutions Article." Md. Code, Real Prop. § 7-401(f).

Section 11-501 of the Financial Institutions Article, however, expressly defines "mortgage loan" as "any loan primarily for personal, family, or household use that is secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling or residential real estate on which a dwelling is constructed or intended to be constructed." Md. Code, Fin. Inst. § 11-501(m)(1).

Here, the Debtor is a legal entity. And it is thusly little surprise that the Debtor cannot, as a matter of law, take out a loan "primarily for personal, family, or household use," insofar as the Debtor (i) is not a natural person; (ii) has no family; and (iii) does not reside in a household.

Plainly, the MMFPA is a consumer protection law and the Debtor is not a consumer. So not only does Jefdan fail to state a claim for relief under the confines of the MMFPA but Jefdan is, too, ineligible to seek recourse under the MMFPA in any event.

## V.    Conclusion

WHEREFORE, DPCL respectfully prays this Honorable Court (i) dismiss the Complaint; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: June 21, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for DP Capital LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of June, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

I FURTHER CERTIFY that on the 23rd day of June, 2025, a copy of the foregoing is being sent via US Mail, postage prepaid, to:

Jefdan Properties, LLC
2235 Conquest Way
Odenton, MD 21113

and

Robert Grossbart, Esq.
Grossbart, Portney & Rosenberg
One Charles Center
100 North Charles Street, 20th floor
Baltimore, MD 21201

and

Kwaku D. Ofori, Esq.
Ofori Law Firm, LLC
White Oak Professional Park
11215-B Lockwood Drive
Silver Spring, MD 20901

<u>/s/ Maurice B. VerStandig</u>
Maurice B. VerStandig